UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHELE BROCK,

    Plaintiff,

v.

CITY OF BELLEVILLE, BELLEVILLE
POLICE DEPARTMENT, OFFICER MICHAEL
SIEBEL, OFFICER JANE DOE, DETECTIVE
JOHN DOES 1 and 2, and LT. JOHN DOE,

    Defendants.

Case No. 17-cv-218-JPG-SCW

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendants City of Belleville ("City") and Officer Michael Siebel (Doc. 57). Plaintiff Michele Brock has responded to the motion (Doc. 67).

**I.    Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present

evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II.     Facts

Construing the evidence and drawing all reasonable inferences in Brock's favor, the evidence in the record establishes the following relevant facts.

On the evening of March 1, 2015, Brock got into a physical fight with her boyfriend Accozio Harriel at her home. In the fight, Harriel smacked Brock several times in the face and tried to choke her, and Brock bit Harriel and pulled his hair. Harriel called 911. Belleville police officers responded to the call, arrested Brock, and placed her in handcuffs. Belleville Police

Officer Hoepfinger transported her to the police station.

In the basement sally port of the police station, still in handcuffs, Brock became unsteady on her feet after getting out of the car. She bent over immediately upon leaving the car and eventually collapsed face-down on the floor behind the car. Siebel, who was working elsewhere in the police station, saw on the surveillance monitor that Brock was having trouble, so he came to check on her. He checked on Brock, and then he and Hoepfinger lifted Brock to a standing position. Brock was either limp or squirming, which required both officers to struggle to keep her upright and help her into the booking area of the police station. At some point Brock began having a panic attack and felt like she could not breathe, so she yelled at the officers that she could not breathe and that she was going to faint. Siebel and Brock then got into a heated verbal argument: Siebel told Brock to stop acting the way she was acting, that she was acting stupid, and to knock it off; Brock asked Siebel what he meant and told him she did not feel well. At one point Siebel took the lion's share of the burden to hold Brock up while Hoepfinger used one hand to unlock and open the door between the sally port and the rest of the station. To do this, he wrapped both of his arms around her so he could support her from both of her sides.

In the course of their argument and while Siebel was supporting most of Brock's weight, spittle flew from Brock's mouth when she spoke because of a gap between her teeth. She covered Siebel's face with moisture, although she did not intend to spit on Siebel. The flying saliva caused Siebel to jerk his head backward, but because he needed to keep a hold on Brock to keep her upright and was in a tight spot between Brock and the door to exit the sally port, he could not move to avoid Brock's saliva. In response, Siebel quickly raised his open hand and briefly slapped Brock on the left side of her face to redirect her head so her spit would not land on his face anymore. Brock posed no additional threat to Siebel or Hoepfinger during the entire incident and

was not a flight risk.  Other than the force needed to hold her upright, Siebel did not use any additional force on Brock either before or after he slapped her.  Brock asked Siebel why he had smacked her, and he said it was because she had spit on him.  She denied spitting on him on purpose and explained that any spitting was unintentional.  Seibel and Brock later apologized to each other.

After being taken upstairs from the sally port, Brock had a panic attack in the booking room of the station, passed out, and hit the back of her head on a bench.  An ambulance arrived to provide medical treatment for her.  Brock was alert enough to hear the paramedics commenting, before they were able to examine her, that there was nothing wrong with her and that she was ignorant.  Brock became agitated and did not want anyone who thought she was ignorant to touch her, so she told the paramedics she was fine and refused any treatment.  She requested that another ambulance be summoned, but the officers refused.

The following morning, two Belleville Police Department detectives interviewed Brock.  At that time, her left eye was swollen.  She reported to the detectives that Siebel smacked her hard in the face, but she never made a formal written citizen's complaint, so no formal investigation of the incident occurred.

Brock was eventually transferred to the St. Clair County Jail, where she was released on bond.  She was charged with, among other things, aggravated assault on a police officer for her contact with Siebel.  She eventually pled guilty to the reduced charge of obstructing a peace officer from making an arrest in violation of 720 ILCS 5/31-1(a), but that charge was dismissed and expunged after she went to mental health court on a regular basis and received counseling.

Brock never sought medical treatment for any injury she suffered while in custody, although her face remained swollen for several weeks.  She did not seek mental health treatment

4

other than what was ordered by the court in relation to her obstructing a peace officer charge.

Brock believes the City had a custom of having police officers slap detainees on the pretense of redirecting their spit. The City provided training on the general use of force, but Brock believes the City did not provide training to officers specifically about how to handle detainees who spit on them. The City had a formal policy calling for the use of "spit hoods" on detainees officers reasonably thought would spit on them and calling for personal protective equipment for officers likely to be spit on. Brock also faults the City because there is a practice that police detectives investigating crimes do not report detainees' oral complaints of abuse made in interviews unless injuries are visible or obvious. The City believes the use of force in an arrest is already reflected in the police report, so the supervisor of the officer using force already knows it occurred.

Brock filed this lawsuit under 42 U.S.C. § 1983 alleging the defendants violated several of her constitutional rights in connection with her arrest on March 1, 2015 (Counts I-IV). Count 1 is against Siebel for excessive force, Count II is against Siebel for denial of medical care following her collapsing and Siebel's slap, Count III is against Siebel for retaliation for speech, and Count IV is against the City for policies condoning officers' unconstitutional conduct. The Court has dismissed those claims to the extent they are asserted against the Belleville Police Department because it is not a suable entity and has dismissed additional state law claims on the grounds that Brock brought them after the statute of limitations had expired (Doc. 37).

Siebel and the City now ask the Court for summary judgment on all remaining claims. Specifically with respect to Count I, Siebel argues that the force he used in slapping Brock was not excessive. With respect to Count II, Siebel argues he responded reasonably to Brock's medical needs when paramedics were called to assist her. With respect to Count III, Siebel argues he

slapped Brock because she was spitting on him, not because she was exercising any First Amendment speech right. Siebel also asserts he is entitled to qualified immunity. With respect to Count IV, the City argues it cannot be liable because Siebel is not liable and because Brock has not identified any City policy that caused a violation her constitutional rights. Brock asserts that genuine issues of material fact remain as to all counts.

## III. Analysis

### A. Count I: Excessive Force

Brock claims Siebel used excessive force when he slapped her. Siebel believes his force was reasonable in the circumstances.

The excessive force claims of an arrestee both before and after her probable cause hearing are governed by the Fourth Amendment's objective reasonableness standard. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015) (pretrial detainee); *Currie v. Chhabra,* 728 F.3d 626, 629-30 (7th Cir. 2013) (arrestee prior to probable cause determination); *see Hill v. Murphy*, 785 F.3d 242, 244 (7th Cir. 2015) (same). Whether conduct is objectively reasonable turns on the "facts and circumstances of each particular case." *Graham v. Connor,* 490 U.S. 386, 396 (1989). In *Kingsley*, the Supreme Court stated:

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."

*Kingsley*, 135 S. Ct. at 2473 (quoting *Bell v. Wolfish,* 441 U.S. 520, 540, 547 (1979); other internal citations omitted).

In determining whether conduct was reasonable, the Court may consider, among other

6

circumstances,

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396-97 (internal citations and quotations omitted). The Court should keep in mind that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. An officer's actual motivation for his conduct is not relevant to whether it was objectively reasonable. *Id.*

Considering all of the circumstances surrounding Siebel's contact with Brock, the Court believes no reasonable jury could find the force Siebel used exceeded what was objectively reasonable. Siebel had arrived in the sally port to assist Hoepfinger with an arrestee who had collapsed for an unknown reason. When he and Hoepfinger lifted Brock to her feet, she was unable or unwilling to support herself and required the efforts of both officers to keep her upright and to move her to a secure cell.

When Hoepfinger needed one of her hands to open the door, Siebel reached around Brock with both of his arms to take most of the burden of supporting her. He was necessarily therefore in very close contact with Brock while she was arguing with him, spraying him with saliva, albeit unintentionally. He jerked his head back, but he could not step back from her to avoid her saliva because he was supporting her and was in a tight spot between her and the door. Had he stepped away from Brock, he would have risked losing his grip on her and having her collapse on the floor

7

and seriously injure herself.

Spraying saliva on an officer, whether intentional or not, presents the risk of spreading disease to the officer, impairing the officer's vision, and impeding the officer from performing whatever task is at hand—here, supporting Brock and transporting her from the sally port to a secure cell.[1] It is reasonable for an officer being sprayed with saliva from close proximity to take action to prevent further spraying by redirecting the mouth of the arrestee doing the spraying. A reasonable officer would know that he needed to keep hold of Brock to support and transport her and that saliva in his face was impeding his ability to do that and risking the transmission of disease. In those circumstances, a reasonable officer would be justified in striking Brock on the side of the face to redirect her mouth. Siebel's single slap was with an open hand, not a fist, was both brief and effective to stop the obstacle that was impeding him from performing his job.[2] He used no further force other that what was necessary to hold Brock up and take her to a cell.

The extent of Brock's injury—facial swelling that lasted several weeks— is not sufficient, by itself, to show the force was unreasonable. Brock was the subject of several instances of facial trauma the day she was arrested: Harriel's slaps, a face-down fall on the sally port floor, and Siebel's slap. She speculates that her swollen face was due solely to Siebel's slap but has not

---

[1] Indeed, Brock's spitting on Siebel supported her conviction for obstructing a peace officer, *see People v. Raby*, 240 N.E.2d 595, 599 (Ill. 1968) (finding obstruction of a peace officer requires "some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties"), although that conviction was dismissed and expunged as a result of her post-conviction conduct.

[2] The defendants cite several court decisions involving an open-handed slap: *Britschge v. Harmison*, 947 F. Supp. 435 (D. Kan. 1996); *Jones v. Goord*, No. 05-CV-0182A(M), 2008 WL 904895 (W.D.N.Y. Mar. 31, 2008); *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, (6th Cir. 2006). For her part, Brock describes another occasion where Siebel was intentionally spit upon by an arrestee, but Siebel did not slap her, and to another case where there was a genuine issue of fact whether excessive force was used against an arrestee: *Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005). These cases and the prior spitting incident are of little assistance to the Court's reasonableness decision because they presented circumstances that differ substantially from those in this case.

8

presented any evidence to make that inference reasonable. Even if Brock's face had become swollen solely as a result of the slap, it was not sufficiently problematic for her to accept the medical treatment offered to her at the police station or to seek it once she was released. The seriousness of Brock's injury is not sufficient, viewed in the totality of the circumstances, for a reasonable jury to find Siebel's force was excessive.

In sum, the evidence shows Siebel made a split-second decision to exercise force to eliminate an impediment to doing his job and to avoid causing other harm to Brock by allowing her to collapse. No reasonable jury could conclude that Siebel acted unreasonably in light of the facts and circumstances confronting him at the time. He is entitled to summary judgment on Count I.

Alternatively, Siebel is entitled to qualified immunity on Count I. Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232; *see Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Even if Brock had been able to show a violation of her Fourth Amendment right to be free from excessive force, the Court must determine whether the right was sufficiently clear at the time

9

of the violation that a reasonable official would have understood that what he was doing violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Brosseau*, 543 U.S. at 199; *Wilson*, 526 U.S. at 609. The inquiry must be made focusing on the specific context of the case, not at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). "[T]he clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* at 552 (quoting *Anderson*, 483 U.S. at 639, 640; internal citations omitted); *accord City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015) ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011).

The plaintiff bears the burden of demonstrating that a constitutional right is clearly established. *Denius*, 209 F.3d at 950. To determine whether the right was clearly established, this Court looks to Supreme Court and Seventh Circuit Court of Appeals decisions, then, if there is no controlling precedent, to all relevant caselaw to determine if there is a clear trend suggesting recognition of the right is inevitable. *Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017). "Qualified immunity is dissolved, however, if a plaintiff points to a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001).

The defendants assert that the law was not clearly established that Siebel's slap of Brock in the circumstances presented clearly violated her constitutional rights. Although it is her burden to

10

point to a sufficiently similar case that should have revealed to Siebel that his conduct was unconstitutional, she has not done so. Instead, she points to general cases regarding the abstract prohibition on the use of unreasonable force. The facts of none of those cases even remotely resemble the facts of this case. Because Brock has failed to show the right at issue was clearly established at the time of Siebel's conduct, Siebel is entitled to qualified immunity. For this alternative reason, the Court will grant summary judgment for Siebel on Count I.

    B.    <u>Count II: Denial of Medical Care</u>

Brock believes Siebel improperly denied her medical care by failing to administer or summon any medical care after she collapsed in the sally port and told him she could not breathe and after he slapped her. Siebel argues that Brock was reasonably provided medical care when the paramedics were called to care for her after she fainted and hit her head on a bench in the booking room.

Denial of medical care claims of an arrestee before her probable cause hearing are also governed by the Fourth Amendment's objective reasonableness standard. *King v. Kramer*, 763 F.3d 635, 639 (7th Cir. 2014); *Ortiz v. City of Chi.*, 656 F.3d 523, 530 (7th Cir. 2011). Whether an officer's response to an arrestee's medical needs was objectively unreasonable depends on "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz*, 656 F.3d at 530. The arrestee must also show that the defendant's conduct caused her harm. *Id.*

The evidence in the file shows that Siebel knew that Brock collapsed when she arrived at the station and that she complained she could not breathe, clearly a serious medical need. He was also aware, of course, that he had slapped her in the face. It was not until she later fainted in the

booking room and hit her head on a bench that medical care arrived. No evidence reveals what response, if any, Siebel had at any particular time to Brock's medical needs.

Siebel argues that because paramedics eventually arrived, a jury must find his conduct was reasonable. However, he does not point to any evidence affirmatively showing he acted reasonably. In fact, he presents no evidence at all of his actual response when he first learned of Brock's medical needs, and he does not even attempt to explain the relevant factors listed in *Ortiz* and why they should lead to the conclusion that he responded reasonably. Nor does he point to an absence of evidence to support Brock's theory that his failure to administer or summon medical help right away was unreasonable. Brock notes that medical help did not arrive until sometime later, and nothing suggests a jury could not reasonably infer that it only arrived later because Siebel did not reasonably respond when Brock first appeared to need medical help. Siebel has not carried his burden of establishing his entitlement to summary judgment in either of the two ways recognized by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986), and *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013): affirmative evidence negating the plaintiff's case or a gap in proof of an essential element of the plaintiff's case.

The Court further declines to find Siebel is entitled to qualified immunity on Count II. It is true that Brock has not responded to this argument and could therefore be deemed to have waived any objection to it. However, it is also true that Siebel could likewise be said to have waived his argument in support of qualified immunity because he has not properly supported his assertion with relevant argument or citations to the evidence. It is well-established that perfunctory, underdeveloped and unsupported arguments are waived. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000); *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000).

The evidence in the record regarding this claim is so scant that the Court cannot even determine what factual conclusions a reasonable jury could draw and whether the law was clearly established that, under those facts, Siebel's conduct violated Brock's right to medical care. Additionally, the sum total of Siebel's argument is, "[A]s to Brock's claim of Denial of Medical Care, a reasonable officer would have believed that EMS being called to the police station to offer treatment is all that would be required under the circumstances present here." Def.'s Mot. Summ. J. 14 (Doc. 57). The record simply fails to contain enough information for the Court to determine whether qualified immunity applies.

The Court will therefore deny summary judgment on Count II.

    C.    <u>Count III: First Amendment Retaliation</u>

Brock claims Siebel violated her First Amendment free speech rights by retaliating against her with a slap because she had said she did not feel good before he slapped her. Siebel asserts that Brock's spitting was not a protected First Amendment activity, that his slap was unlikely to deter speech, and that there is no evidence he was motivated by Brock's speech as opposed to her spitting when he slapped her.

The analysis of this case is complicated by the fact that both sides rely on an outdated standard for proving a First Amendment retaliation case. Historically, to make out a *prima facie* case of retaliation, the plaintiff needed to prove three things: "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a *motivating factor* in the employer's action." *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir.2006) (emphasis added). However, the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 174-75 (2009), changed the landscape. In *Gross*, the Supreme Court held that simply proving a factor was a "motivating factor" is not sufficient to establish a plaintiff's

case in suits under federal law unless a statute says it is. *Id.* (finding Title VII expressly authorized liability for "motivating factor" causation but Age Discrimination in Employment Act did not); *Fairley v. Andrews,* 578 F.3d 518, 525-26 (7th Cir.2009). Instead, the plaintiff must ultimately prove "but-for" causation, that is, but for the factor in question, the defendant would not have made the decision or taken the action it did. *Fairley*, 578 F.3d at 525-26.

In *Kidwell v. Eisenhauer*, 679 F.3d 957 (7th Cir. 2012), the Court of Appeals for the Seventh Circuit explained *Gross*'s impact on First Amendment retaliation law. Now, in order to prevail on a First Amendment retaliation claim at trial, a plaintiff must prove not just that the protected activity was a *motivating factor* for the defendant's adverse action, but that, *but for the plaintiff's protected activity*, the defendant would not have taken the adverse action. *Id.* at 965. However, while the plaintiff carries the ultimate burden of proving but-for causation at trial, at summary judgment, the burden of proving causation is split between the parties. Thus, in order to withstand a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must establish the historic *prima facie* case as set forth above. *Id.* Then the burden shifts to the defendant to rebut the causal inference created by the plaintiff's showing and to prove that it would have taken the same action regardless of the plaintiff's protected activity. *Id.*; *Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013). If the defendant fails to satisfy its burden, the plaintiff has established the but-for causation he needs to prevail in the action. *Kidwell*, 679 F.3d at 965. If the defendant is successful in rebutting the plaintiff's *prima facie* case, then the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was pretextual and that the real reason was retaliatory animus. *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012). To show a proffered reason is a pretext, the plaintiff must "produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner v. Herrick*, 639

14

F.3d 371, 379 (7th Cir. 2011); *accord McGreal v. Village of Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017).

The Court finds there is sufficient to evidence for Brock to establish a *prima facie* case. Siebel does not contest that Brock's speech in the sally port was constitutionally protected, and the Court has no problem believing a slap in response to speech would likely deter a reasonable person from further speaking. Brock's speech and Siebel's slap occurred so close in time that it is reasonable to find the speech was at least a motivating factor in Siebel's action. In response, Siebel counters that his conduct did not depend on Brock's speech and that he slapped her because she was obstructing his performance of his job by spraying saliva in his face. In other words, he would have taken the same action in response to her unintentional spitting regardless of what she had said to him.

Brock points only to suspicious timing—Siebel's slap immediately following her speech—to suggest that Siebel's proffered reason for the slap was pretextual and that the slap was actually motivated by her speech. However, suspicious timing alone is generally insufficient to create a genuine issue of material fact about pretext unless there is other circumstantial evidence showing speech was the reason for the defendant's action. *McGreal*, 850 F.3d at 314 (citing *Pugh v. City of Attica,* 259 F.3d 619, 629 (7th Cir. 2001)). "The reason is obvious: '[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment.'" *Kidwell*, 679 F.3d at 966 (quoting *Loudermilk v. Best Pallet Co.,* 636 F.3d 312, 315 (7th Cir. 2011)); *accord McGreal*, 850 F.3d at 314.

Brock argues that Siebel's response to another arrestee who spit on him shows his explanation for slapping Brock was pretext for retaliation for speech. For two reasons, this argument is unconvincing. First, Brock points generally to Siebel's deposition to establish the

15

facts of that earlier encounter without citing any specific page number. *See* Pl.'s Resp. 8 (Doc. 67). This is not sufficient to carry Brock's burden to point to evidence to resist summary judgment. It is not the Court's function to "scour the record in search of evidence to defeat a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). "Judges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), or in deposition transcripts. The parties must point to the evidence they want the Court to consider, and if they fail to do that, the Court will not consider the unsupported allegations.

Second, even if there were sufficient evidence to support the version of events Brock recites in her brief, the circumstances of that event differ vastly from those in this case. In the prior instance, an arrestee spit once in Siebel's face, and that spitting did not prevent him from finishing his job of escorting her out of her home. Unlike Brock, the earlier arrestee did not continuously spray Siebel with saliva such that there was a need to redirect her mouth to stop an ongoing shower that was impeding his ability to support and transport her. The one other incident, even combined with suspicious timing, is insufficient to create a genuine issue of material fact about pretext in Brock's case.

In other words, there is insufficient evidence for a reasonable jury to conclude that Brock's speech was the but-for reason Siebel slapped her. Consequently, she cannot prove an essential element of her First Amendment claim against Siebel, and he is entitled to summary judgment on Count III.

Alternatively, Siebel is entitled to qualified immunity. Brock has not responded to Siebel's assertion of qualified immunity with respect to Count III, much less pointed to any cases with facts even remotely similar to the facts in this case that would establish Siebel violated her

First Amendment speech rights. For this alternative reason, the Court will grant summary judgment for Siebel on Count III.

D.  Count IV:  *Monell*

Brock claims that her injuries were caused by the City's policies, practices and customs that condoned unconstitutional conduct, including the policy of not properly monitoring, investigating or sanctioning officers' misconduct. Siebel argues that Brock suffered no constitutional injury and that there is no evidence of the City's deliberate indifference or a causal link between the City's actions and her injury.

A local governmental body such as the City may not be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a plaintiff may establish a municipality's liability by showing that "(1) [she] suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the [municipality]; which (3) was the proximate cause of [her] injury." *Ienco v. City of Chi.*, 286 F.3d 994, 997-98 (7th Cir. 2002) (citing *Monell*, 436 U.S. at 690-91). The second element can be establish by proof of one of three things: (1) the municipality had an express policy calling for constitutional violations, (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law or (3) if a person with final policymaking authority for the municipality caused the constitutional violation. *Monell*, 436 U.S. at 694; *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). A governmental body is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694.

17

Because Brock cannot show a Fourth Amendment violation based on excessive force or a First Amendment violation for retaliation for speech, as explained above, she cannot prove the City liable for a policy, practice or custom of condoning such constitutional violations. Generally, a municipality cannot be liable under a *Monell* theory where none of the its employees are liable for violating the plaintiff's constitutional rights. *Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). This general rule applies, however, only where municipal liability would be inconsistent with a finding of no individual liability. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (holding "a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict"). For example, as the *Thomas* court notes, if there was no liability against an individual employee for a constitutional violation simply because the plaintiff was unable to identify the individual, but municipal policy caused the unknown individual to violate the plaintiff's constitutional rights, the lack of liability of the individual would not be inconsistent with municipal liability. *See id.* In such a case, municipal liability would not depend on individual liability. To determine if an inconsistency exists, the Court must consider "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*

Here, finding Siebel not liable and the City liable would be inconsistent. Siebel was the instrument of the injury alleged to have been caused by the municipal policy. However, as explained above, there is no evidence from which a reasonable jury could find Siebel used excessive force or retaliated against Brock based on her speech. It would be inconsistent—in fact, absurd—to say that the City's policy of condoning misconduct *caused* it where Siebel did not commit misconduct. Therefore, the City is not liable where Siebel committed no constitutional violation.

With respect to Brock's medical care claim, her only remaining constitutional claim, Brock has not pointed to any evidence of a City policy, practice or custom relating to providing medical care for inmates. She only points to policies regarding the reporting of excessive force, but her excessive force *Monell* claim has been disposed of above. The only thing she can point to in the medical context is the specific instance of Siebel's response, whatever it may have been, to her medical need. However, improper conduct in one instance does not indicate a widespread practice. *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 531 (7th Cir. 2000) ("[A] single instance of allegedly unconstitutional conduct does not demonstrate a municipality's deliberate indifference to the constitutional rights of its inhabitants."). There is simply not enough evidence from which a reasonable jury could conclude that the City had a policy, practice or custom of condoning unreasonable medical care.

For the foregoing reasons, the Court will grant summary judgment in favor of the City on Count IV.

## IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Doc. 57). The motion is **GRANTED** as to Counts I, III and IV; the motion is **DENIED** as to Count II;

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The City is terminated as a party in this case.

**IT IS SO ORDERED.**
**DATED:   May 22, 2018**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**